RODOLPHUS W. DEXTER & another *vs.* EDMUND GARDNER & others.

Under the usages and discipline of the society of Friends, a bequest to the overseers of a "Friends' preparatory meeting," in trust, for the benefit of the Friends of a particular place, may be upheld as a devise to the overseers of a preparative meeting, that is, to the male overseers of the monthly meeting which includes the preparative meeting.

A bequest, in trust forever, "the income of which is to be appropriated for the benefit of the Friends' meeting" in a particular place, without further designation of the purposes to which it is to be applied, is a charity, and therefore not void as a perpetuity, if it appears by evidence that all the purposes to which the Friends, under their usages and discipline, apply their funds are the maintenance of religious worship and of schools, aiding the sick and the poor, and the purchase and repair of burying-grounds; and that the latter of these purposes is regarded by them as among their religious duties.

BILL IN EQUITY, in the nature of a bill of interpleader, brought by the executors of the will of Abner Pease, late of Fairhaven, to obtain the instructions of this court as to their duties under the residuary clause of the will, which was as follows:

" I give, after the decease of my said wife, or when she ceases to be my widow, to the overseers of the Long Plain Friends' preparatory meeting and their successors in that office, in trust forever, the remainder of my personal estate not otherwise disposed of, the income of which to be appropriated for the benefit of the Friends' meeting in said Fairhaven and Rochester."

The case is sufficiently stated in the opinion.

*T. D. Eliot & T. M. Stetson*, for the plaintiffs, cited *Bliss* v. *Amer. Bible Soc.* 2 Allen, 337, and cases cited; *Winslow* v. *Cummings*, 3 Cush. 358, 365; *Earle* v. *Wood*, 8 Cush. 430, 445, 446, 450, 455, and cases cited; *Attorney General* v. *Merrimack Manuf.*

*Co.* 14 Gray, 604 ; *Brown* v. *Kelsey*, 2 Cush. 243 ; *Attorney General* v. *Heelis*, 2 Sim. & Stu. 77 ; *Attorney General* v. *Comber*, Ib. 94 ; *Trustees of British Museum* v. *White*, Ib. 594 ; 2 Story ˙on Eq. § 1164, and cases cited ; *Pawlet* v. *Clark*, 9 Cranch, 292 ; *Townsend* v. *Carus*, 3 Hare, 257.

*J. H. Clifford & E. Ames*, for the heirs at law. The trustees and the *cestui que trust* are both so indefinite that the bequest should fail. And there is no sufficient designation of the purposes to which the ˙bequest is to be applied, to constitute a charity. Gen. Sts. *c.* 31, § 8. *Owens* v. *Missionary Soc.* 14 N. Y. 385, 386, 405, 411, 412, and cases cited. *Fowler* v. *Garlike*, 1 Russ. & Mylne, 232. *Brown* v. *Yeall*, 7 Ves. 50, *n.* *Morice* v. *Bishop of Durham*, 9 Ves. 399 ; S. C. 10 Ves. 521. *Beekman* v. *The People*, 27 Barb. 260, 302 ; S. C. 23 N. Y. 298. *James* v. *Allen*, 3 Meriv. 17. *Ellis* v. *Selby*, 1 Myl. & Cr. 286. Tudor on Charitable Trusts, (2d ed.) 15, 16, 252. But it appears by the evidence in this case that ˌa portion of the income of this bequest will be expended in fencing and repairing burying-grounds. This is not a charity. *Doe* v. *Pitcher*, 3 M. & S. 410 ; S. C. 6 Taunt. 359. *Mitford* v. *Reynolds*, 1 Phillips Ch. 185. Tudor on Charitable Trusts, 11.

CHAPMAN, J. It is necessary to ascertain who are the trustees and who are the beneficiaries referred to in the residuary clause now under consideration, and to what objects the legacy is to be applied. It appears that the testator was in the habit of attending worship with the sect of Christians called Friends or Quakers ; and though he had never become a member of their body, he took an active interest in their prosperity. ˈBy their book of discipline, which is made evidence in the case, and by the depositions that have been taken in proof of their usages, their religious organization appears to be in substance as follows : It consists of a series of what are termed meetings — the word being used, not only to designate assemblies of the people for worship, but also the jurisdiction and authority of these bodies.

The lowest of these in order, which are called particular meetings, are local assemblies for the purpose of worship only

Sometimes several of these exist in a single town. They are similar to what some other sects call congregations. Next in order are preparative meetings. These consist of the members of on° or more particular meetings. They assemble for worship, and also for the transaction of business to a limited extent. They usually include more than one particular meeting. Next above these are monthly meetings. They consist of as many preparative meetings as may be convenient, and assemble monthly. From among the members of each preparative meeting belonging to them, they annually elect two or more males and two or more females as overseers. These overseers superintend the discipline and manage the funds and business of the monthly meetings; and the members which belong to each preparative meeting superintend its discipline and manage its funds and business. By *St.* 1822, *c.* 92, corporate powers were conferred upon these bodies, and they have ever since been intrusted with corporate powers to take and hold property in succession. *Earle* v. *Wood,* 8 Cush. 437. Gen. Sts. *c.* 31, § 8. The monthly meeting is subordinate to a quarterly meeting, which is composed of as many monthly meetings as may be thought fit to constitute the same; and each of the monthly meetings elects delegates to it. It meets quarterly. Over all these meetings is a yearly meeting, which includes within its jurisdiction all the meetings of the denomination of Friends in New England except those in Vermont. It meets annually, in the sixth month, in Rhode Island, and each quarterly meeting elects delegates to it.

There is a Long Plain preparative meeting, which is composed of four particular meetings, namely, the Long Plain, the Fairhaven, the Rochester and the Acushnet particular meetings; each of which has a separate house of worship. This preparative meeting is one of two which constitute the New Bedford monthly meeting.

The testator lived in Fairhaven, within the limits of the Long Plain preparative meeting. In using the word " preparatory," there can be no doubt that he meant " preparative." There is no other object to which the word " preparatory " could be

applied, and the error might be easily made. As " the overseers of the Long Plain preparative meeting " are those who are elected by the New Bedford monthly meeting, he undoubtedly referred to them. We are confirmed in this construction by the consideration that the legacy is given to them " and their successors in that office, in trust forever" — indicating the intent of the testator to give the legacy to a corporate body, capable of taking his gift in succession, and holding it forever. We are still further confirmed in this idea by considering who are the beneficiaries. The income is " to be appropriated for the benefit of the Friends' meeting in said Fairhaven and Rochester." Such meetings of the Friends as existed in those two towns at the date of the will are here indicated. They are the four particular meetings which constitute the Long Plain preparative meeting ; the towns of Acushnet and Mattapoisett having been incorporated since that time. The Long Plain prepara tive meeting is therefore the real beneficiary, for its duty is to provide for the pecuniary wants of each of these particular meetings. The funds which are to be appropriated for the benefit of these religious bodies are, as we have seen, by the discipline of that denomination, to be held and administered by the overseers of the New Bedford monthly meeting. It ought, however, to be remarked that the duty of holding and managing the funds belongs to the male overseers exclusively.

Having thus ascertained who are the trustees and who are the beneficiaries, we are next to consider the purpose of the gift, that it may be seen whether it is a charity, and so not within the rule against perpetuities. The next of kin, who appear as defendants, deny that it is a charity, and allege that it is a gift in perpetuity. But we can see no ground of doubt on this point. Since the decision of *Earle* v. *Wood*, it must be considered as settled that the *St.* 43 Eliz. *c.* 4, is a part of our common law ; and that a trust for the use of a well known religious community is valid, though that community may be a voluntary body and not incorporated. The fact, therefore, that the particular and preparative meetings are not corporate bodies is immaterial. And as the gift is to a religious society,

"for its benefit," it is not within the rule against perpetuities. The evidence in the case states all the purposes to which the Friends apply their funds. These purposes are, the maintenance of religious worship and of schools, aiding the sick and poor, and the purchase and repair of burying-grounds. This last object is said not to be a charity within the statute; and it is contended that the legacy is void on that account. But the language of the will in this case is no more comprehensive than that of the deed in the case of *Earle* v. *Wood.* The trust there expressed was, " to ·and for the uses and purposes of the said people called Quakers, as by the said yearly, quarterly or monthly meeting, or their or either of their .committees, may be devised, advised and required." That trust was held valid as a charity within the statute; and if it be so, a trust " for the benefit of the Friends' meeting in Fairhaven and Rochester " is unquestionably valid. ' The trust in that case would include appropriations for burying-grounds, as well as in this case. And where a denomination of Christians regard the providing and oversight of burying-grounds as a religious duty, accompanying burials of the dead with religious services, as is usual among most sects of Christians here, it is difficult to see by what principle this religious duty can be distinguished from that of maintaining and repairing meeting-houses, in respect to the statute. It is clear that the Friends regard both alike as religious duties, to be performed by their religious organizations. We cannot regard this as an erroneous view.

The case of *Doe* v. *Pitcher,* 6 Taunt. 359, in which it was held that a grant in trust to repair and if need be to rebuild a vault and tomb for a private family was not a charity, is not in point, because the object there was merely secular. And the passage cited from Tudor on Charitable Trusts, 11, is not in conflict with the views here expressed. We think that all the objects to which the overseers have a right, by the usages of their denomination, to appropriate their funds are to be regarded as charitable, and that the legacy is valid.

The plaintiffs are entitled to a decree which shall declare that the legacy creates a valid trust; that the trustees are the male

overseers of the New Bedford monthly meeting; and that the beneficiaries are the Long Plain preparative meeting.

The costs of the parties, to be taxed as between solicitor and client, should be charged upon the fund, and the residue of the legacy is to be paid to the trustees, to be held and managed according to the provisions of the will.